The next case today is Cynthia Boss v. Federal Housing Finance Agency et al., Appeal No. 20-2025, and Judith A. Sisti v. Federal Housing Finance Agency et al., Appeal No. 20-2026. Attorney Johnson, please introduce yourself for the record and proceed with your argument. Thank you, Your Honors. Again, Michael Johnson, representing the Federal Housing Finance Agency and also representing all the appellants in this case. I have ten minutes total. Because the Court and Mr. Flores have already heard much of my argument, I'd like to reserve five minutes for rebuttal. You may. Thank you, Your Honor. So these are important cases, and they're interesting cases. They're important because they involve the Constitution. They're interesting because they involve conservatorships, which, like receiverships, are a somewhat unusual and unfamiliar form of business organization. But that doesn't make the questions any less straightforward. The questions are simply whether FHFA, as conservator of otherwise private corporations, acted as the government when it invoked a power that the private corporations had prior to conservatorship. And the other question is whether Fannie Mae and Freddie Mac, by virtue of being in the conservatorship of FHFA, became government actors for that same purpose. The answer to each is no, and the Court should, therefore, reverse the judgment. What do you say to Mr. Fischbach's argument that we should change our view of LeBron based on Brentwood? There are several responses, but I think some of Your Honor's questions got to my first, which is that if the Supreme Court had wanted to walk away from LeBron, it's had ample opportunity to do so, and never has taken advantage of it. So there's actually doctrine about how courts of appeals can't assume that the Supreme Court has implicitly sub silentio overruled itself. That hasn't happened here. There's nothing in the Association of American Railroads case, for example, that undoes the permanence requirement of LeBron. That case involved a very different issue, whether for separation of powers purposes, the disclaimer in Amtrak's corporate charter had a different effect than the court ruled that it had in the LeBron case for due process purposes. There's no analysis of permanence, because the Supreme Court had already addressed the permanence issue in LeBron, and held that the government's control over Amtrak was permanent, and it was permanent based on a criteria that's very different and much more definite and easily administrable than the one that Mr. Fishback posited. What makes government control permanent is that it will remain until a legislative enactment changes it. And that was the difference between Amtrak and Conrail in the LeBron case, and it's also an important difference between Amtrak and the example we talked about earlier of a controlling block of shares coming into the ownership of a government agency, which the Supreme Court used as the example of temporary control. So if you were right about that analysis, then it would seem to follow that if we were sitting here a hundred years from now, and the situation were exactly the same as it is at this moment, your suggestion would be that there is no satisfaction of the permanence requirement. Well, so the facile response, which I know is unsatisfactory, is of course that hasn't happened, and I doubt very much that it will happen, but I think, Your Honor, we have to take the Supreme Court at its word that if the government takes a controlling interest in an otherwise private corporation by means of acquisition, which is a sort of... So is this a yes? I think so, Your Honor. There are two dimensions here. There's the extent of practical pervasive control, which is present, all right? Then there is the temporal dimension, and indefinite and control that can last a long time is not permanent. You need that structural element where the control can only be changed by legislative enactment, and that is clear from a close reading of LeBron, and it's just not present here. It's also consistent with our common experience with FDIC receiverships. We cite in the brief one of the most readily available statistics, which suggests FDIC receiverships last, on average, roughly nine years. So if lasting for nine, 10, 12 years makes an entity permanently within the government's control, then FDIC receiverships would meet that criterion, and they just don't. It's interesting to me because on another way of looking at receiverships, they are more permanent than conservatorships because a receivership is a liquidation entity. The receivership goes on until all the assets have been disposed of. So by definition, it lasts the entire remaining life of the entity in receivership. Conservatorships are different. The expectation is- Mr. Johnson, I believe Ms. Judge Kayada has another question, and I have one. Thank you. Thank you, Judge Lynch. Do you distinguish between a situation in which Congress, in setting up the situation, has articulated a standard to determine when it will end, as opposed to a situation where the ending is entirely up to the federal agency? If you do distinguish that, which one do we have here? Well, it's a relevant point, Your Honor. It's a point that suggests that an entity that Congress creates with some guideposts as to when it will come to its conclusion is far more likely to be temporary. Now, I don't think we can read that as a requirement because that would contradict that just very important example the Supreme Court gives of a controlling block of shares coming into federal ownership. Am I hearing a no? I think it's an important attribute. I think it points toward temporariness, but I don't think it's a required element. So I would agree that it's relevant. I would not say it's dispositive or necessary. Mr. Johnson, it strikes me we've got sort of two topics going on here that maybe are being mixed up on this question of how much discretion Congress is allowed to give to an entity to step into the shoes of another as a conservator and how definite the guideposts must be. That's kind of a separate issue than assuming the ownership of shares as Treasury has done. I take your point that Treasury isn't the defendant here. I'd like to go back to Judge Kayada's question. What are, in fact, the guideposts that guide your client for when a conservatorship will end? One knows this depends in large part on market conditions and all sorts of things not in control of the conservators, so some flexibility is required. But could you articulate for us exactly what the guidance is? Yes, Your Honor, in 4617A2, as informed by the rest of 4617, 4617 is the provision of the Housing and Economic Recovery Act that lays out the conservator and receivership powers of FHFA. In 4617A2 says that the purpose of a conservator and receiver is to reorganize, rehabilitate, or wind up the affairs of the enterprise and conservatorship. So FHFA is working toward rehabilitation, and as Your Honor points out, assessing whether and if so when the enterprises have been rehabilitated to the point that they are ready to reassume their private status is something that is a matter of judgment and some discretion, and Congress vested that discretion in FHFA. Now I think FHFA has shown that it is working very hard to restore the soundness and solvency of the enterprises. That's another provision of 4617. It's one of the conservators' powers, operate the agency, try to restore them to soundness and solvency. The conservator is doing that. And so rehabilitation is that guidepost that tells us that's what we're working toward, and when FHFA, with access to its intimate knowledge of the enterprises and their finances and the secondary market conditions, makes that assessment, that's when they will be released. All right. I will ask my colleagues whether they have any further questions. I do not. Okay. You have your five minutes of rebuttal. Thank you. Thank you, Your Honors. Attorney Johnson, please mute your audio and video at this time. Attorney Flores, if you could unmute your device and if you could introduce yourself on the record. May it please the court, Stephen Flores for the appellees, Judy Sisti and Cindy Boss. With me is my colleague Michael Zabelin. I'm not going to repeat what you heard. I just want to emphasize a few points and a few things that are specific to my cases. First, the standard here is different than in the case you just heard about. This is an appeal from a stipulated judgment so that the appellants can appeal the denial of their motion for a judgment on the pleadings. As Your Honors know, that motion could have only been granted had Judge McConnell found after taking all well-pled allegations as true and giving us the benefit of every reasonable inference that the claims were not plausible. Now, the complaints in both cases are materially the same. But I want to pick up Judge Kayada on something that you said and something that I've heard mentioned a couple of times. First, I want to make the point that even though the FHFA is acting as conservator, please don't lose sight of the fact that there have been many instances where they've gone to court and they've said, hey, we're acting as conservator for these entities, but we still want you to treat us as the government. And Judge McConnell addressed many of those opinions. And it's at ADD 016, I believe it's note 8. And what do they say in response to those opinions? All those examples where the FHFA comes into court and says, well, we're the conservator, but we want to get more rights because we're actually the government. What do they say? They say, well, none of those cases involve constitutional claims. And then in their reply brief, they throw it back to me and they cite to a bunch of cases that don't involve constitutional claims. And they say, we've never answered why constitutional claims should be treated any differently. Mr. Flores, you started with a proposition I'd like to ask you a few questions about. You said the only standard we have to meet here is whether our claims are plausible. So even if in the prior case there is a holding that neither of the agencies are government agencies and no cause of action is therefore stated, nonetheless, we have a plausible claim. I don't understand why the one follows from the other. And would you please tell me what you think would be plausible about your claim? And I assume you were trying to do that by saying, well, gosh, they can't have it both ways. All right. Maybe they can. So do you have another argument beside that, they can't have it both ways? Absolutely, Judge. But first, if I could, let me unpack your question a little bit. In the prior case, a ruling on those claims, which are different in some ways than my claims, it is possible to find one set of claims implausible as pled and my claims plausible as pled. No, in theory. I'm pushing it down to the level of these cases. Understood. Understood. So, Your Honor, you asked about other points. First, let me say this. You're right. You're all right that in Meyer, they didn't decide the due process issue. But what I was going to say was context matters here. When I say you can't have it both ways, they say, well, why do constitutional claims matter? Why should they be treated differently? And they should be treated differently because if they're not treated differently, if they're treated like a tax claim or a breach of contract claim or the other claims that they put in front of you as examples, then hypothetical Freddie Mac Railway Company, Your Honors, could operate segregated rail cars under federal conservatorship with impunity. The law does not require us to accept such an unconstitutional result. And it charges you, I would submit, with… I'm sorry, but that could not happen under congressional enactments. There are a lot of statutes that apply to private entities that would forbid such discrimination. And it's also common for Congress to say to particular agencies, we expect you to comply with various employment laws. So that argument doesn't seem to work. I accept your point, Your Honor. And let me stress this. When you look at Meyer, you'll see it actually wasn't disputed that the FDIC as receiver was the government. It was the FDIC itself that raised the sovereign immunity defense. The federal agent in that case, Petrullo, escaped liability, it says this in the beginning of the opinion, using a qualified immunity defense. So it wasn't disputed, and how could it be? Because the conduct at issue in the claim was conduct that occurred under government control while the entity was in receivership. Now… Are you distinguishing… I mean, it seems to me that a conservator acts… in exercising rights of his ward. And why is it not possible that in one capacity would be the government, but not in the other capacity? So if what it's out doing is simply collecting debts owed to Fannie Mae, then it stepped into the shoes of Fannie Mae. But if it's doing something that isn't on behalf of Fannie Mae, then it might be the government. Your Honor, I agree with the notion that depending on what it's doing, you can reach a different result. We only contend that the facts matter here. And when you're talking about a constitutional claim that accrues under government control because of a government directive, and it's a claim where the government itself is getting the spoils from the action, in that limited scenario, it's not only correct and commonsensical to say that it's the government, it's also… I'm sorry. You keep saying the government gets the spoils. The government pushed a lot of money into the mortgage market to stabilize it. The government is being repaid on that investment. You seem to think the government's making a huge profit here as though it were an entrepreneur. But in fact, it is being restored to the position of a lender who has made a loan. Your Honor, I respectfully disagree, and I'll point you to the allegations and documents in the record. As of 2016, we plead, and I don't believe it's disputed and certainly taken as true. As of 2016, the GSEs paid the Treasury $60 billion. Yes, we're well aware of that fact. You have forgotten the argument that was made on the other side that there is a cost to lending money. That money from the Treasury could have been put somewhere else. In any event, we're not getting anywhere with this. Do you have any other argument? Yes, I do, and this is critically important. To me, it really puts in focus why the receivership cases are at least of limited value. There is a case that the other side cites as a positive case for them that's not positive at all. It's Perry v. Mnuchin. This is a D.C. Circuit case that talks about how HERA is different than FERA, HERA being this statute at issue here, FERA being the receivership statute for the FDIC. Under this statutory regime, the agency is free to act in its own governmental interests. When we're talking about cases like Besborn v. Eli, this Besborn case that they think is helpful. In Besborn, the claim accrued prior to the government taking control, and a key factor in Besborn was the court said the government's not getting the spoils. They're not acting in its own interest. Here, the government is statutorily entitled to act in its own interest. That's critical. Another point I want to make, the directive of giving the SAI, mandating that the GSEs follow the SAI and engage in the fastest form of foreclosure possible when foreclosures were deemed necessary was a regulatory directive. I understand that they dispute that, and they point to a page in the record. I'm going to point to two other pages in the record because I think it's important. Page JA311 in the BOSS record compared with 173 and 174 make one thing clear. The division of the FHFA that's responsible for overseeing and enforcing the SAI is the Division of Housing Regulation. It is not the division that's overseeing the conservatorship. Now, they may say, well, that doesn't matter. That's an issue of fact, and if they did this regulatory action as a regulator, there is no argument that they should be able to fit in O'Melveny's shoes because they did this action as a regulator even if they did everything else as the conservator. So, Your Honors, we do have a plausible claim. As pled, we do plead that the government has benefited here. The documents we cite to show, unlike the FERA cases, that here the government is statutorily entitled to act in its own interest. Another point. Thank you, Mr. Flores. Thank you, Judge. Appreciate the time. At this time, Mr. Flores, please mute your device. And, Attorney Johnson, you have five minutes of rebuttal. Please reintroduce yourself on the record. Thank you, Your Honors. Michael Johnson back to address a few points. Let me start where Mr. Flores concluded. He says that a regulatory arm of FHFA is entitled to look at whether the enterprises are complying with a directive that his own document says FHFA promulgated as conservator. So, I think what he's asking is does the fact that a regulator can monitor and enforce compliance with a regulated institution's own policies, is that relevant to whether the regulated entity is governmental? Well, the OCC looks at whether banks comply with their own policies and procedures all the time. The FDIC, the State Chartered Institution, where it's the primary regulator, looks at whether they comply with their own policies and procedures all the time. So, the fact that a regulatory part of FHFA looks at whether the enterprises are complying with the SAI does not make the SAI a regulatory directive, and the document Mr. Flores himself pointed the court to in the complaint says it's not. It's a conservative directive. Mr. Flores suggested that there's something different about FHFA conservatorships because they, in some sense, can act in the best interests of the agency. Well, I would ask the court and pose the question, what does the FDIC do as receiver? Its objective is to maximize the return on assets so that the governmental part of FDIC, the deposit insurer, isn't out money. So, there's no difference between what Mr. Flores says FHFA is statutorily empowered to do and what FDIC receivers do as a matter of course. They protect the coffers of the government's deposit insurance fund. They prevent money from going out of the government. That doesn't make FDIC receivers government actors. It can't make FHFA a government actor. Mr. Flores notes that FHFA sometimes argues in connection with other issues that it is entitled to be treated as a non-private actor. That is true. As this court noted in the FIALA case, having some governmental attributes for some purposes, including in that case, where the court said, does the fact that Fannie Mae is not the government for sovereign immunity purposes, does that mean Fannie Mae is not the government for mayoral doctrine purposes? And the answer was no. So, the court has already distinguished constitutional purposes, sovereignty, sovereign immunity, from other purposes, in that case mayoral doctrine. In the examples Mr. Flores cites, purposes of statutes like the Private Securities Litigation Reform Act. The court is exactly correct that talking about segregated railroads is frankly a needless distraction. I won't belabor the point, but obviously no federal conservatorship or other corporation, private, public, otherwise in the United States could do that today. And really, what Mr. Flores is trying to do is distract from the very important values that underlie the doctrine that constitutional constraints only bind governmental entities. That sphere of protected private conduct is important. It's really important. And the Supreme Court's recent decision in the Halbach case, which we cite in our reply brief, makes that point very clear. We can't deem everything governmental or we are going to lose some very, very important freedoms in this country. So, take an example a little different than one Mr. Flores had. Suppose the FHFA, as conservators said, we want you only to foreclose on mortgages granted by Hispanic borrowers. That would also be illegal, Your Honor, and it wouldn't be a power that Fannie Mae or Freddie Mac had as private corporations. So, it wouldn't fall into this category of the conservators simply directing, overseeing, supervising, choose your gerund. The exercise of powers, the ward, the enterprising conservatorship already had. So, you would say under LeBron that they could sue directly under the Constitution, the government? Your Honor, I would say that they would have a cause of action for statutory violation. Against whom? Spare lending, it would be the basic one. I'm not an expert in... Against whom? Against whom would that action lie? I'm sorry? Against whom would they bring that statutory action? I think they would bring it against the entity in conservatorship. So, it would be Fannie Mae. Okay. We talked a little about Brentwood and some of these entwinement and entanglement theories. I want to circle back, I may have... Time has expired. You have one minute, sum up. Thank you, Your Honor. Just with regard to Brentwood and entwinement and entanglement, what we look at in those cases is the nexus between government conduct, and there's none here because the conservator is not governmental, but if we assume it is, the nexus between the government conduct and the act in question. The act in question here is a private act. It's the private exercise of a private right, the plaintiff's privately granted. It's not something like a private prison corporation or something like that where these entanglement theories come into play. For all these reasons, Your Honors, the conservator itself is not a governmental actor. The conservator's control over the enterprises, therefore, couldn't convert them into government actors, but even if we assume somehow it could, that control is not permanent under LeBron. It's more like the control the agency would have if it acquired ownership of the corporations and could dispose of that ownership at a time of its choosing. That's the example the Supreme Court used for temporary control, not permanent. The Boston statistic judgment should be reversed, and the order on the motion for judgment on the pleadings should be vacated. It is a matter of law. Plaintiffs cannot allege facts that would suggest the conservator or the enterprises in conservatorship could be a government actor. Thank you, Your Honors. Okay. Thank you all. Counsel, we appreciate it. The court is going to take a three-minute recess at this point. Thank you. Thank you. That concludes argument in this case. Attorney Dionne Fishback, Johnson, Levine, and Flores should disconnect from the meeting.